We have three cases on the agenda for this afternoon. And the first one is, we'll just refer to as the Merck cases, appellate numbers 18-2317, 2318, 2319, and 2320. We'll hear you from the appellant. Good afternoon, Your Honors. May it please the court. My name is Daniel Hume with a law firm Kirby McInerney. I'm here on behalf of the appellants. First, I'd like to request five minutes of rebuttal time. I'll be granted. Thank you. Your Honors, we're here today on appellant's appeal of the district court's order dismissing four cases, 16 with 16 plaintiffs on grounds based in Selusa, the Securities Litigation Uniform Securities Act. The purpose of Selusa is to prohibit duplicative class actions. And that's really what I want to focus on today. Selusa does not prohibit individual actions. What we have here are several individual actions that do not get anywhere near to a class action. The reason we might look at even individual actions can be aggregated if they meet the definition of proceeding as a single action for any purpose under Selusa. We certainly don't dispute that, Your Honor. And the reason we go through the aggregation exercise is to see if we can get to Selusa's 51 or more plaintiffs. The purpose of Selusa, of course, is to prevent duplicative class actions, essentially shadow class actions that might be that might proceed in the wake of an actual PSLRA class action. Why don't we have that here? Why? Why? Given the definition of proceed that includes coming from a single source, don't we have actions that proceed as a single action where they they come from identical complaints and where your clients were plaintiffs in the in the earlier class action? Well, Your Honor, plaintiffs were our clients were not plaintiffs in the early class action. They were class members and they opted out at no time. Did the actions before the court here ever exist with the action with the two class actions that that are at issue? They couldn't they could not have proceeded together. And in fact, they did not proceed together. You don't you don't get to a question even of whether they of whether there are indicia of coordination or anything like that, because they never proceeded together in the first place. If your case had been filed 30 minutes before the class action were resolved, Slusi would bark, correct? No, because there still would be no indicia of coordination. There wouldn't be any indicia of coordination where your clients were the beneficiaries of the coordinated discovery, the motion practice, the coordinated trial rulings, et cetera. Well, we weren't the beneficiaries of any of that, at least certainly not yet. But we were you know, we meet we meet some of the some of the tests of Slusi, the initial test that the cases arise from the same common set of facts and circumstances. The law is the same, but that's a separate question when we get the real issue on this appeal. And this case is whether the cases were proceeding together. And to answer that question, you have to look to see if there was actual coordination. But what actual coordination isn't a functional coordination? Well, it's the same thing. I mean, you certainly have some case law which found coordination when there was not an official, let's say, court order. But most of the cases, most of the district court cases, and there really is no appellate guidance on this. Most of the district court cases involve situations where there are court orders, stipulated coordination orders. So you certainly don't have that here. Why isn't the cutting and pasting of complaints or the piggybacking on discovery coordination? It looks like the timing of the filing of these suits is, you know, connected. So why why shouldn't we, you know, understand these these complaints as effectively coordinated? Well, again, because you can have, for example, that would lead us down a bit of a slippery slope. I mean, any time you'd have a case that has some relative that has some resemblance to another case, you'd then be talking about Slusi. I don't we don't think you're not telling us this is a coincidence that the complaints were strikingly, you know, these connections. Right. This is not a we're certainly not disputing that, that the cases here arise out of the same facts and circumstances as the class action. You don't dispute that. If one were to put the complaints of the opt out cases and the complaints of the class, there would be mirror image paragraphs at various points. We certainly don't dispute that the complaints are very and do you also not dispute that before the district court when asked about no discovery that you would your clients would be able to take advantage of the discovery done. There wouldn't be very much more to do. And from the class action case to proceed to opt out. Well, two things on that, your honor. First of all, that's not exactly correct. It was couched that way by the district court. It was couched that way by the defendants. But really, this whole issue of about in the briefing in the first appeal that that this court had, where there were representations about how the the case went on the issue of the statute of repose and the representation made in that briefing about the fact that there was this overlapping discovery, a useful material that were disclosed. And of course, your honor, may remember that case. We we made that point. We made that point, really, because the discovery process would more would more likely benefit the defendants, first of all, because they wouldn't have to go through all this additional all this discovery again and repeat the whole process again. So but even even putting that aside, that benefit is does not go to the question of whether the cases are coordinated. The the cases, the cases that have talked about benefiting from things, they talk about benefiting from the coordination itself, benefiting from the coordinated discovery orders, being part of the process, doing the depositions together. Those are the indicia. But your your representation is that if your action was filed a minute after your clients opted out in March, while while the class action was still going on and they filed their class action and you're saying that they would not be subject to this bar. Well, then we get into the question. Then we would see if, in fact, coordination occurred. We infer from the timing of the the rush out, shall I say that the eight month or so delay between the opt out date and the time the complaints were filed. But this was not artful pleading to avoid the PLSRA, but sort of artful procedural activity to try to avoid what you say would be this simultaneity requirement. Not at all, your honor. I'll say what I told the district court. The solution was the furthest thing from our minds. It may have been the furthest thing from the defendant's minds at the time. We had federal claims. And of course, your honor will recall that those claims got caught up in a in a subsequent developments of the law that triggered the statute of repose and eliminated tolling. And we were ultimately subject to the ANZ Supreme Court decision that this court had to follow. At the time, we had federal claims that were validly opted out. We still we did have state claims in there as well, but we were not thinking about Seleucia at all during that time. Are you aware of any other statutes that use similar language about joined or consolidation or proceeding as a single action? Anywhere this phrase comes from, any other places we should look for analogies in the law? Well, your honor, I would just really look at the plain meaning of the words, you know, plain meaning of the word proceed. It's a it's a present tense word. Plain meaning of the word coordination is is, you know, it means things happening between two or more entities and cases just can't be coordinated if they're not existing simultaneously. One definition of proceed is to continue after a pause or interruption. Where is where is there a contemporaneity requirement as opposed to a continuity requirement for things proceeding as a single action? Well, the statute says to proceed together. And so if we were proceeding together with the class action and we were doing the things that you see in some of the other cases, the district court cases, which talk about, again, you know, depositions proceeding where everybody attends. Proceed together, proceed as a single action on Judge Krause's definition. It could proceed for a while, take a pause and then resume. But they were never that would that would assume that that they were together as an action in the first place. And again, we're not just trying to be hyper technical here. We understand the argument about timing. I mean, as I mentioned a few minutes ago, there was no gamesmanship here because we weren't thinking about Slusa. We didn't have to think about it back then. Not necessarily. I mean, something can proceed as a single action if you have continuity of action. But if if what why shouldn't we view your client's actions as simply picking up where the prior class action left off? After all, they were members of that class and they are benefiting from the continuation of the same, the same claims, the same complaint as other than the federal that was dropped as you as you referenced. Well, again, because because of the benefiting that comes up in this analysis is the benefiting of coordination itself. And since we since we didn't have any coordination, the fact that our claims are going to go are going to deal with similar issues as class claims that were previously settled, you know, doesn't meet that standard. But in some ways that that seems circular because we're trying to decide how much coordination is is sufficient coordination to proceed as a single action. And here there was no coordination. That's the point. Simply having the same simply having the same or similar complaint isn't part of the coordination test. I mean, it does it does check a different Slusa box. And we, you know, we're not disputing that the complaints are very similar. But in evaluating whether whether two actions have proceeded as a single action, all of the courts that have looked at this question have have referenced and identified among the relevant considerations whether the complaints were identical and whether there was identity of issues, whether the complaint was designated as it was here as a related matter to the other action. And we have that here, too. But again, that's not the that's not the Slusa prong that's being at that issue. I mean, we agree that we've got complaints which are very similar to the class complaints. That's true, but that's not the question that's really on appeal here. So if the question is whether there's coordination and all those other cases, every single district court case that anybody's looked at, you've got cases existing together side by side. You've got coordination between them where the lawyers are working together. You usually have court orders to that effect. Now, that's when you really see two cases together or more. Some of those cases involve counsel of plaintiffs who were trying to do their best to try to distance himself from coordination. So it doesn't it doesn't seem that actual coordination or even consensual coordination seems to be the task. Well, just stepping back for me, your honor. I mean, Slusa is gone from trying to prevent simultaneous class actions kind of down this road of roping in individual actions that probably shouldn't have been roped in. You might be thinking of the Valiant case, a more recent case where, yeah, you did have the plaintiff's counsel trying to get away from the class action for this very purpose. However, even in that case, they had more than 50 plaintiffs themselves. So they would have been, we say, Slusa anyway. And a lot of the discussion in that case involving these other issues didn't really matter because they already had their 50 plaintiffs. They already had 55 plaintiffs. But, you know, your honors, let's remember these situations have come in in district courts, in other, you know, throughout the in other circuits, frankly, they're certainly not binding here. We think this is a bit of a matter of first impression. We think Slusa has been pushed a little bit too far. Instead of precluding and preventing duplicative class actions, it's become a precluding state claim statute, which it's not supposed to be. And that's what's happening here. We'll have you back up on rebuttal. Thank you. Good afternoon, Your Honor. Dan Kramer from Paul Weiss for Merck. And let me start by focusing on the statute and the wording of the statute. I think it's important to remember that we there are two types of covered class actions. There are single lawsuits and there's a group of lawsuits. And what we argued below successfully was that the plaintiff's lawsuits should be grouped with the class action lawsuit. So as to trigger Slusa. And in the provision that we cite, it starts out by saying a group of lawsuits should be, must be filed in or pending in the same court. That is the phrase in Slusa that talks about timing. That's the temporal phrase. Congress could have said this only applies to cases pending or pending at the same time in federal court. But it didn't say that. Instead, it said filed in or pending in federal court. Why doesn't that, as the district court acknowledged, just account for the fact that one of them may exist at the same time for some period, but one of them may not be pending at the time of the Slusa motion? Sure. And this language would cover that, but it's broader because it doesn't say pending at any time. If Congress wanted to limit this provision simply to cases that had some overlap with the class action, they could have done it very simply. They could have said this applies to cases who are pending at any time at the same time. But they didn't. They said filed in or pending in. It would capture the circumstance Your Honor mentioned, but it's broader than that. Well, maybe, maybe not. It still has to meet the definition of a covered action. And how can it be that we have something proceeding as a single action if one of those actions, in fact, the one that's necessary to aggregate to more than 50, has ceased to exist before the other action ever comes into existence? Right. So let me answer that in two ways. First of all, as a technical matter, it didn't cease to exist. It still continued. It continued for other purposes. But the class action continued. There were appeals on attorney's fees issues. There was the continuing jurisdiction to make sure that the settlement funds were distributed. So as a hyper technical matter, the class action continued during the time that these cases were filed. But I think even more to the point, if you look at the language which says joined, consolidated, or proceed as a single action for any purpose, for any purpose, we know that it's not literally proceeding as a single action because this is the grouping provision. This is a provision that groups distinct and different actions. So we know that it's not literally a single action. So what does the phrase mean when it says proceed as a single action for any purpose? Well, what are some of the purposes that you see when actions actually are joined or consolidated? Right? What do you actually see in those circumstances? Well, sometimes in a consolidated action, you'll see an amended consolidated complaint, the same complaint. These plaintiffs, I know they keep trying to back away from it, they literally copied the class action complaint here and filed it as their own. They literally copied it. And not only did they have the benefit of the class action plaintiff's complaint, but in that complaint, the class action plaintiffs say we did an investigation and we're now alleging facts from various confidential witnesses. So they copied the complaint and they also copied an investigation that they didn't do, the class action plaintiff's investigation. And so that's another way that they're not only benefiting from the first action, but proceeding as a single action. And then they came to this court and they said to this court, you know what? We're going to make this easy. There's going to be minimal discovery in this case because we are going to adopt all of the discovery in this case. And so, yes, John. Yes. You've conceded that this isn't literally a single action. My concern is what does the phrase proceed as a single action do is as a single action surplusage. What work is single doing on your reading here that wouldn't mean exactly the same thing if that word were not in the statute? Right. So I think what the what the word connotes, it's not it didn't say it must be a single action. It said it must proceed as a single action, like a single action, similar to a single action. This is how this is the simile theory. Well, like or as simile, it doesn't have to be literal anymore. That's not the way Congress normally writes statutes. But this is the your honor. This is the grouping section. This is the section that already assumes that the cases you're looking at are distinct cases. All right. But Congress has given us a principle for dividing that here. And you haven't talked about a used in generics. It's joined, consolidated or otherwise proceed. So it doesn't have to be exactly joint or consolidation, but that's the akin to it. What a joint or consolidation look like two cases share the same discovery phase where they share a trial together or they have they file the same briefs with two docket numbers on them or something. But a copied complaint is not the same. It's it's the same thing again in a later action. It's not a single action. So let me respond to that in two ways. Let me respond to that in two ways. So so the doctrine that you're citing says when you have a statute that says A, B or C, if the context is right, you can say, well, then C must be similar in some respect to A and B. So the two points I'd make is number one, this statute doesn't say simply A, B or C. It says A, B or otherwise C for any purpose. Okay. So already it's a little bit different. And if you're trying to ask yourself, well, what does that mean for any purpose? It doesn't mean for every purpose. It doesn't mean for most purposes. It doesn't even mean for the most significant purpose. For any purpose is just about the broadest phrase Congress could have written. But it has to be a single action for some purpose before it can be for any purpose. As a single action because they knew Congress knew this was not going to be in fact a single action. It's in the it's in the it's in the part of the statute that talks about grouping distinct actions. Congress was speaking to the common phenomena of cases where, for example, pretrial discovery is handled together or there's a case management order that that sets certain aspects of the case or or even even if there is a stay in one case pending the disposition of a motion in the class action where there is some procedural coordination that that would seem to be connoted by the term otherwise. In that list of disjunct otherwise means different from Congress could have said there must be procedural coordination. They didn't Congress. Congress had coordination as one of three items that did not require coordination. Otherwise, it could have just said it must be coordinated. There's some common thread in the concept of being joined or consolidated that's carried over to proceeding as a single action by by the term otherwise. And why isn't that procedural coordination that happens when cases are joined, consolidated and otherwise proceed? Seems like it's referencing what what is common about those two. So Congress Congress could have said that Congress could have said or is an otherwise coordinated or otherwise procedurally coordinated. And it didn't. And and and what I think is the similarity here, because I think there is a similarity. What I think is the similarity here is exactly what the district court focused on, which is the benefits that these opt out plaintiffs are getting from the class action. And it's not just copying the complaint. It's not just relying on class counsel's investigation. It's not just adopting the discovery record, which, by the way, is a huge benefit for them. It would cost them millions of dollars here to do the work necessary to do the discovery in this case. And and and it's and it's not just saying to every court they're in, this is a related case. Right. This is a related case. It's all of those things. And it's trying to do exactly what SLUSA wanted to prevent. It's trying to continue the class action in the guise of a state law claim. Can I ask you something? In response to Judge Bevis's question about otherwise proceed as a single action. You seem to lean a bit on the on the two words as a. Yes. So from your point of view, do I understand you correctly that it's proceeding like a or similar to a. And so you're using that as an interpretive as a is is connoting to you some message from Congress? Well, because it's the end of the phrase, which we should not forget, is for any purpose, for any purpose. The broadest language Congress could put in and say if there if there is any similarity here, if there is any purpose here, then you're then you're captured under SLUSA and other courts have looked at it this way. Amorosa and this I'm going to mispronounce this, a stitching case. Both said, let's take a look at the commonality. Does a complaint look to be the same? And by the way, when we talk about seeking a discovery state. But aren't those aren't those from your adversaries point of view different? Because at the time that analysis was happening, the two actions were both. They were alive and moving forward. And isn't that what he's trying to say is different about this case? That the class case has concluded his opt ins have. It's certainly what makes it different. I don't think it makes it better. Number one, Congress could have said the cases must be must proceed together. As plaintiffs counsel kept saying, or it must be at the same time or must be pending at the same time. There's so many ways Congress could have said it and they didn't. And the other thing is the consequence of this argument. The consequence of this argument is it gives a really sort of nutty incentive to opt out plaintiffs. To opt out and wait so that they can have successive lawsuits. So it's like an artful, as I was saying, are you saying it's more like an artful procedural move, as opposed to an artful pleading move, which our court has already said you can't do? Yes, absolutely. There's no other explanation for it. And look, it didn't work on the federal claim because of the Supreme Court's ruling on statute of opposes. They waited too long. And the notion that you can just wait out the class action and then burden federal courts with the same action that just happened successively and be here 10 years later, 15 years later. Yes, I'm sorry. What you're speaking to seems to go more to compliance with the opt out deadline and with the statute of limitations. But Congress was trying to strike a balance between the due process, the constitutional rights of individual punitive class members who may want to proceed on their own to be able to opt out. And even if they are then to file an identical complaint, as long as they're and even if they benefit, it's hard to imagine an opt out who would not benefit in some way from the class action discovery or other parts of a class action. But if an opt out is then filing an individual action, they're doing so. They've opted out timely and they're doing so within the statute of limitations. Then how could we say that just because they're common issues or because they use the same language from the complaint, that they've lost their due process right to proceed individually? So you have the right to opt out. You don't have the right to bring a new action if there are other impediments to that action. If it's after the statute of limitations or the statute of proposed, you don't have a constitutional right to bring a new action. These plaintiffs, had they opted out earlier, had they filed in a different district, had they disowned all of the benefits of the class action, they might be in a very different position. But that's not what they did here. They sought every benefit, including the benefit of their prior status as class members. They came before this court and they said to this court, we get a benefit in our new action because we were class members of the VITORIN class action, and that gives us various tolling benefits. They came to the court and they affirmatively asked for that benefit. And so I don't think this is, Judge Carls, I just don't think this is. The Supreme Court has given them that, right, with American Pipe. No, the Supreme Court gave them that on American Pipe for sexual limitations, but not on statute of proposed, and that's what got them caught up. But they're seeking the benefit of it, and that's fine. I have no problem with people seeking benefit, but there are consequences to that. And one of the consequences of seeking a benefit from the class action is you fall into the language of SLUSA. You don't have to. You can disown, disclaim all the benefits, you know, that exist, and then maybe you can proceed with your state law claim. But once you seek those benefits as if you were in that action, which is what they've done, SLUSA says you're precluded. But there are even district courts that said you can't try to disclaim it. They've resisted those efforts, but I am going to let my colleague get his question in. I apologize. Yes, sir. I guess my concern is that when you've said this isn't literally, and this does start to sound to me like the simile version of the statute, that, well, it's functionally like it, Congress would have wanted it, but if these are bad consequences, Congress can amend the statute. I can't understand what work the word single is doing in the statute on your reading. Why is it there? Right. But I don't think that that's a temporal concept. I think the temporal concept in the statute is in the filed, in or pending language. And so if you're worried about surplusage and you're worried about language, why did Congress write five? Why wasn't pending good enough? What is filed? And you can think of different circumstances, but certainly it's to indicate that it's not necessary simply to be pending. And if you look at the word single, to say single means simultaneous, I think is going too far. You may find it's not self-defining and it's ambiguous, but it certainly doesn't connote that they must be pending at the same time and then undercut the earlier part of the statute. That's the issue I think one has in reading this provision. Can I make sure I understand this part of your argument? Because here we have what is left is purely state law claims. Correct. Right? Yes. And so if I understand your position correctly, these plaintiffs could file their individual actions in a different district court. Yes. They could file their actions in state court. Yes. But they can't file their actions in this court because this court is the one that had previously disposed of the class action. Because the statute says filed in the same district court. They had filed in state court Pennsylvania. The removal provision of SLUSA. You've got to remove it and bring it back in. If they filed in a different district, we'd probably try and get it over here. But the statute says pending in the same district. And by the way. But the statute was crafted in a way that even if they made the effort, you said they could have made, you could have removed, transferred, if it was another district, get it back to the same court. But then their argument that they didn't seek benefits from the class action would be a little bit stronger. But I've got to tell you. But the statute isn't about the benefits of the class action. The statute's about making sure people aren't doing end runs around the strict requirements of the private litigation security reform act. I agree with that, Your Honor. Yes. Correct. These are state law claims. Yes. What basis would there be for removal from state court to federal court? There's a SLUSA removal provision. And you could argue federal question. And at this point, you could argue if there's a judgment by this court that it's an attempt to, you know, at this point, to circumvent the judgment of this court. So maybe it works. That provision only applies to covered actions. Yeah. Right? It's covered actions that could be transferred or removed. And a covered action would require that it be filed in or pending in the same court. So I think the point, Your Honor, is that. So it couldn't be transferred or removed. Right. If it were filed in state court or a different district court. Right. So I think the point is the reason they filed in this district was precisely to try to get the benefits, to make sure they got the benefits of the rulings and discovery in the class action. Also, there's venue. Right. And venue. Right. Because this is this district of New Jersey is, in fact, where Merck's headquarters are. So it may be hard to actually, for venue purposes, to file somewhere else. Frankly, I hadn't, you know, I thought of this case from the defendant's position, not how to fix, you know, what plaintiffs did. But what they did here, just, and I see I'm way over. I apologize. What they did here was, I think, firmly within the statute, which does not have a simultaneity requirement. And if it were read to have one, I think it would violate the filed in or pending cause, and it would be wholly, wholly not in keeping with the purpose of the statute. Thank you, Your Honor. Your Honors, as Judge Schwartz pointed out, the solution is not about benefits. It's not about getting into the minds of plaintiffs and their lawyers to figure out motivations. We did everything by the book here. We opted out when we were supposed to. We filed our cases when they were timely, at the time, before ANZ changed the law. The defendants are talking about policy, but what they're really trying to do, I think Judge Krause hit upon that. They're trying to, they just don't want, they don't want opt-out claims. They didn't want the opt-out federal claims that we had, and they were successful there thanks to ANZ, and they don't want these claims. But it's certainly nothing to do with another class action that's going on around anybody's back. So, again, there's no benefit analysis, and we haven't received any benefits so far. Should we take anything from the fact that the opt-out action weren't filed right away, that the plaintiffs waited, opt-out plaintiffs waited eight months or more between the opt-out and they waited after the class certificate settlement, rather? Is there anything we should construe from that? No. I'll take you through it very quickly. It's pretty normal for opt-outs to happen on the last day of the opt-out deadline and for complaints to be filed when you're at or pretty close to the deadlines. I mean, that's how it usually works. In this particular case, there was an opt-back in, right, so plaintiffs had to take some time to evaluate whether they wanted to do that. But, no, there was no, and as I mentioned earlier, we had federal claims. We weren't thinking about SLUSA and the state claims. There was no gamesmanship here. We simply were bringing our federal claims and our state claims in a timely fashion under the law as it existed at that time. I mean, this case is a little strange because of the statute of repose problem that popped up. And then it gave the defendants here a gotcha moment. Aha, well, we got you on the statute of repose because the law changed in the middle, and now we can try to get you on SLUSA, but they really can't. Well, there was a request for an interlocutory appeal, so I don't know that we should be ascribing bad motives to anybody. I mean, there was a request to have that particular issue decided. Very true, very true. But in the course of this litigation, the statute of repose law had been changing. I mean, I don't need to go down that road, but when we got into this case, MDMAC hadn't been decided when we opted out of this case. So, I mean, things sort of started changing. But all that's really put aside. I'd like to just focus on what I think Your Honor has been focusing on, the plain language of the statute and the purpose of the statute. The statute is very clear temporally. It says, you know, are joined, are consolidated. You can repeat the word are joined, are consolidated, or otherwise are proceeded. That's all present tense. I don't see any other way to read that. Proceed as a single action. I mean, as I think Your Honor has pointed out, as is not a vague word. If Congress wanted to talk about the past tense, again, it could have here. The fact that in a different part of the Seleucia element, you get into filed in or pending before. Because the reason we have the pending is because the case may have been transferred. So we might have filed this case in the District of California. Mr. Kramer would have transferred that case to New Jersey. So it wouldn't have been filed in the District of New Jersey, but it still would be pending in New Jersey. That's why you have both words. And that's a separate part of Seleucia anyway. Filed also means it could have been filed and closed. And pending means still active, right? Well, I guess you can think about it that way. But to me, the most common sense answer to the question of why do they have both filed and pending, why do you need both words, it's the reason I just suggested. Because often these cases will be filed somewhere else and transferred. Maybe it would have been filed in state court and removed. So you'd still have to get into the pending part. Congress didn't want to limit it to it has to be filed here. That's what we think they were doing. But even so, you can put all that aside because we get to the proceeding as a single action part. And, again, you can twist the words around. They just can't mean anything else, but the cases are proceeding together. They exist at the same time. And they're coordinated. All the addition of coordination are things that are happening as the cases are going on. That's the whole point of the coordination. We may have similarities. But, for example, if we had copied an SEC complaint, and would we be talking about Seleucia as well, just because we copied some other complaint on behalf of the entire United States? I don't know. It seems like a slippery slope that the court, I hope, would not go down. We're so far away from the original purpose of Seleucia that I would urge the court, this is certainly a bright line. You can't have two cases coordinated when they don't exist at the same time. Period. And let's, again, remember the purpose of Seleucia of preventing duplicative class actions. Seleucia came about after the PSLRA because you had plaintiff's lawyers banding together hundreds of funds to form basically a shadow class action because they couldn't win the lead plaintiff motion. That's the kind of thing Seleucia really was designed to prevent. And we get that. It wasn't designed to preclude a couple of individual cases that are existing when there's not even a class action around. Thank you. All right, thank you. Thank you to both sides for a well-briefed and well-argued case. We'll take a matter under advisement.